UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 2828 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Darlene Hinton filed a claim for Supplemental Security Income ("SSI") benefits with the Social Security Administration, alleging that she had not been able to work full-time due to numerous disabilities. The Commissioner denied the claim and then denied Hinton's request for reconsideration. Hinton sought and received a hearing before an administrative law judge ("ALJ") pursuant to 20 C.F.R. § 404.914. The ALJ denied the claim, and the Social Security Appeals Council denied Hinton's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005). Hinton timely filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision. Doc. 1. Before the court is Hinton's motion for judgment on the pleadings. Doc. 22. For the following reasons, Hinton's motion is granted and the case is remanded to the Commissioner for further proceedings.

**Background**

The following facts are taken from the administrative record.

A.  **Factual Background**

Hinton was born on April 6, 1964, has a high school education, and speaks English. She worked most recently at an answering service, where she answered telephone calls and took messages, and as an office clerk for the Will County Health Department. Doc. 15-4 at 32; Doc. 15-8 at 2-6. Hinton asserts that she is disabled and unable to sustain full-time employment because she suffers from several medical conditions, including type II diabetes mellitus; neuropathy, a neurological disorder that causes peripheral nerves throughout the body to malfunction simultaneously; migraine headaches; hernias and bulging discs affecting her spine; arthritic complications in her hands, arms, and spine; anemia; and obesity.

Between 2004 and 2008, Hinton saw several doctors, underwent numerous clinical tests, and was admitted to hospitals on numerous occasions to treat and assess her impairments. The medical findings and opinions at times were inconsistent. For example, Hinton was diagnosed with "moderately severe sensory motor peripheral neuropathy involving both legs" in January 2005, Doc. 15-10 at 64; various hernias, protrusions, and abnormalities affecting the spinal cord in May and December 2006, Doc. 15-11 at 18, Doc. 15-10 at 137; and uncontrolled diabetes on multiple occasions in 2007, Doc. 15-12 at 22, 29. Other medical examinations, however, revealed no obvious deformities, muscle weakness, or atrophy of her legs in 2004 and 2005, Doc. 15-11 at 62, 75, 81, 83; the ability to grasp and manipulate objects and to move her arms and legs in a normal range of motion in 2007, Doc. 15-11 at 135-138; and well-controlled diabetes in 2005, Doc. 15-10 at 10.

After applying for SSI benefits, Hinton saw Dr. Afiz Taiwo at the request of the Bureau of Disability Determination Services ("DDS"). Dr. Taiwo opined that Hinton was "reliable" and

had cervical radiculopathy (hernias), diabetes, and diabetic neuropathy. Doc. 15-11 at 135, 138. Despite this, Dr. Taiwo noted that Hinton had full range of motion in her neck, arms, and legs, and that she could grasp and manipulate objects, walk over fifty feet, and get on and off the examining table without difficulty. Dr. Taiwo also noted that several neurologic and mental health indicators were normal, although Hinton's left leg had diminished sensation to touch. *Id*. at 136-38.

Following Dr. Taiwo's evaluation, another DDS physician, Dr. Calixto Acquino, completed a "Physical Residual Functional Capacity Assessment" of Hinton's health. Dr. Acquino never personally examined or treated Hinton, and he based his assessment on a review of Hinton's medical record as it existed in January 2007. Dr. Acquino concluded that Hinton could stand for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, frequently lift ten pounds, occasionally lift twenty pounds, and engage in unlimited pushing and pulling activities. Dr. Acquino further opined that Hinton could occasionally climb stairs, stoop, kneel, crouch, or crawl at work, and that she had no limitations in reaching in all directions, engaging in gross and fine manipulations with her hands, or working in extreme environmental conditions. Dr. Acquino explained that Hinton's records indicated that she suffered from "Diabetic neuropathy chronic," but that she could work. *Id*. at 141-44. Dr. Acquino's opinion was affirmed by Dr. Francis Vincent on May 14, 2007. *Id*. at 149.

### B. The Administrative Hearing

At the administrative hearing before the ALJ, Hinton testified that she can sit for forty-five minutes, stand for thirty minutes, and walk only short distances. Doc. 15-4 at 17-18. She

explained that sitting or standing any longer produced sharp burning pains in her feet and legs. *Id*. at 19, 28. She ranked her pain as an eight on a ten-point pain scale, asserted that medication does not provide marked relief, and added that the pain kept her from concentrating for sustained periods of time. *Id*. at 26. Hinton further testified that she was capable of reaching in all directions, but that she experienced pain doing so because pain in her neck radiated down her left arm. *Id*. at 18, 36. While Hinton admitted that she could carry eight pounds using both hands and that she could dress and groom herself, *id*. at 19-20, she stated that she struggled with certain "motor skill problems" and had trouble picking up a quarter or paper clip with her left and (sometimes) right hands, *id*. at 20. Hinton also noted that her blood sugar levels fluctuated widely, *id*. at 23, that she was stricken with migraine headaches nearly every day, *id*. at 26, and that her only relief from pain was sleep, which she did four to five hours every day before going to bed at 7 p.m., *id*. at 29-30.

Dr. Barbara Beller, a medical expert, testified regarding Hinton's medical record. She explained that Hinton suffers from several impairments, including diabetes mellitus, migraine headaches, polyneuropathy, and obesity. *Id*. at 41. Dr. Beller then opined, without further explanation, that Hinton could perform the following work: "Light duty. Occasional 20-pound lifting, frequent 10-pound lifting. Standing two hours in an eight-hour day or shift. Sitting six hours out of eight. Push-pull, unlimited. No postural limitations. … And no environmental limitations." *Id*. at 42. When asked what kind of pain is produced by polyneuropathy, Dr. Beller responded that "[h]ow she experiences is really subjective," and that consistent burning in the lower extremities "could be one of many descriptions … that a person subjective[ly] experiences." *Id*. at 43-44.

When Dr. Beller was asked to assess medical evidence indicating that Hinton had suffered a hernia causing mass impression on her spinal cord and another hernia causing severe stenosis of the spinal cord—a condition that causes abnormal narrowing of the cord—she stated: "Again, subjective. Sometimes … people don't know they have them because they don't have symptoms and someone else may have symptoms." *Id*. at 46. Pressed by Hinton's attorney to explain the impact of a simultaneous compression and narrowing of the spinal cord, Dr. Beller responded only that "[i]t's very subjective." *Ibid*. Finally, Dr. Beller testified that obesity on the order of Hinton's—she is 5 feet 8 inches and weighs 200 pounds, which translates to a body mass index of roughly 34, rendering her "obese," SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002)—"affects the structure and musculo-skeletal" and may impact the pain experienced by an individual afflicted with polyneuropathy. Doc. 15-4 at 44.

Glee Ann Care, a vocational expert ("VE"), testified about Hinton's health and employment prospects in the Chicago metropolitan area. VE testimony helps to determine "whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used …." 20 C.F.R. § 404.1566(e). At a hearing, a VE may "respon[d] to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

The VE opined that Hinton's previous work as a telephone and office clerk was sedentary, "low end semi-skilled" labor. The VE then was asked a series of hypothetical questions regarding employment prospects for hypothetical individuals. The ALJ asked what

-5-

sort of and how many jobs an individual of Hinton's age, education, and work experience might find if she was limited to full-time work that required her to lift twenty pounds occasionally and ten pounds frequently, stand for two hours and sit for six hours in an eight-hour workday, and abide by certain postural limitations, including frequently engaging in gross and fine manipulation, balancing, and reaching in all directions. The VE estimated that there would be 4,700 telephone clerk positions, 3,800 account clerk positions, and 8,000 order clerk positions, all sedentary jobs, in the metropolitan area. The ALJ then adjusted the hypothetical to suppose that the employee had the option to sit or stand at will and, because of "perceptions of discomfort," would be permitted to be "off task" for four to five percent of the workday. With the new limitations, the VE reduced the available telephone, account, and order clerk positions by half, to 2,350, 1,900, and 4,000, respectively. Doc. 15-4 at 50-53.

Hinton's counsel asked the VE if any jobs would allow an employee to lie down during the course of an eight-hour workday. The VE responded that an individual's need to lie down during the workday "would preclude competitive employment." *Id*. at 53. When asked about the impact of missing work for health-related needs, the VE responded that an employee could miss no more than one day per month, and that with any more missed days, the employee "would ultimately be written up and terminated." *Id*. at 54.

    C.    **The Commissioner's Decision**

The ALJ issued a decision finding that Hinton was not disabled and therefore that she was ineligible for SSI benefits. The ALJ followed the "five-step sequential evaluation process" for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The five steps are as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments [in 20 C.F.R. Part 404, Subpart P, App. 1] that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal quotation marks omitted); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). RFC "is defined as 'the most [the claimant] can still do despite [her] limitations.'" *Weatherbee*, 649 F.3d at 569 n.2 (alterations in original) (quoting 20 C.F.R. §§ 404.1545(a), 416.945(a)). "A finding of disability requires an affirmative answer at either step three or step five. The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At the fifth step, the government "must present evidence establishing that the claimant possesses the [RFC] to perform work that exists in a significant quantity in the national economy." *Weatherbee*, 649 F.3d at 569 (footnote omitted).

Here, the ALJ determined at step one that Hinton had not engaged in "substantial gainful activity" since submitting her SSI application. At step two, the ALJ determined that Hinton suffered from the severe impairments of: (1) type II diabetes mellitus; (2) discogenic and degenerative disorders of the spine; (3) migraine headaches; and (4) arthritis in her left hand and lumbar spine. At step three, the ALJ found that none of these impairments were listed or equal

-7-

to a listing in 20 C.F.R. Part 404, Subpart P, App. 1. Hinton does not challenge the ALJ's rulings at any of these steps. As part of step four, the ALJ determined that Hinton had the RFC to "perform light work":

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), frequently lifting and/or carrying 10 pounds, occasionally lifting and/or carrying 20 pounds, standing and/or walking for approximately 2 hours in an 8 hour workday, and sitting for at least 6 hours in an 8 hour workday. Other limitations include: frequent use of hand/arm and foot/leg controls, and frequent fingering, handling of objects, overhead reaching, climbing of ramps/stairs, and balancing; occasional stooping, kneeling; and no climbing of ladders, ropes, or scaffolds.

Doc. 15-5 at 10. Given ths conclusion, the ALJ then found that Hinton was unable to perform her past work as a telephone or office clerk due to the exertional/non-exertional requirements of those positions.

At step five, however, the ALJ found that Hinton was capable of performing other jobs that were available in substantial numbers in the Chicago metropolitan area. In particular, the ALJ determined that an individual with Hinton's RFC could work as a full-time telephone, account, or order clerk. Having determined that jobs existed for an individual with Hinton's RFC, the ALJ determined that Hinton was not disabled under the Social Security Act and declared her ineligible for SSI benefits.

## Discussion

A claimant is disabled under the Social Security Act if she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant will

-8-

prevail if her impairments prevent her from performing her prior employment and any other job generally available in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). As noted above, because the Social Security Appeals Council declined to review the ALJ's decision that Hinton was not disabled, the ALJ's decision became the Commissioner's final decision.

Section 405 of the Act authorizes judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). The court reviews the Commissioner's legal determinations *de novo* and her factual findings deferentially, affirming those findings so long as they are supported by substantial evidence. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (internal quotation marks omitted). If the reviewing court finds that the Commissioner's decision is not supported by substantial evidence, "a remand for further proceedings is [usually] the appropriate remedy." *Briscoe*, 425 F.3d at 355. Moreover, the court "cannot uphold an administrative decision that fails to mention highly pertinent evidence," *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), or a decision containing errors of law, *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

In addition to satisfying these standards, the Commissioner's opinion must build an "accurate and logical bridge from the evidence to [the] conclusion so that [the] reviewing court[] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (internal quotation

marks omitted); *accord Briscoe*, 425 F.3d at 351 ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding that the Commissioner must "articulate at some minimal level [her] analysis of the evidence to permit an informed review") (internal quotation marks omitted). To build a logical bridge, the Commissioner must "sufficiently articulate his assessment of the evidence to assure [the court] that he considered the important evidence and to enable [the court] to trace the path of his reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation marks omitted). The court "cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Hinton argues that the Commissioner's decision errs in three respects: (1) by improperly finding the Hinton could use her upper extremities frequently; (2) by failing to adequately support its credibility determination; and (3) by failing to consider Hinton's impairments in combination. Doc. 23 at 1-2. The court agrees with the second and third arguments, warranting a remand.

### A.   The Adverse Credibility Determination

The ALJ's credibility determination states:

> In sum, I have made every reasonable effort to obtain available information that could shed light on the credibility of the claimant's statements regarding the nature and severity of her impairment(s) as relates to her activities of daily living, the location, duration, frequency, intensity of symptoms, the factors that exacerbate symptoms, the dosage and any claimed side-effects of her medication, her treatment, and other measures

> used other than treatment/medication, and any other factors concerning functional limitation (20 CFR 416.929(c)). I find that while the claimant undoubtedly may experience some pain, limitations, and restrictions from her impairments, the medical record in its entirety demonstrates that the claimant has no greater limitations in her ability to perform work activities than those reflected in the [RFC] reached in this decision.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Doc. 15-5 at 13.

An ALJ's credibility determination is "entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness." *Briscoe*, 425 F.3d at 354. A reviewing court may "overturn a credibility determination only if it is patently wrong," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), or if the ALJ fails to "justif[y] her conclusions with reasons that are supported by the record," *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010); *see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). To build the required logical bridge for a credibility determination, the ALJ must consider not only the objective medical evidence, but also the claimant's daily activity; the duration, frequency, and intensity of pain; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and functional restrictions. SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also Villano*, 556 F.3d at 562-63 (requiring an analysis of the factors listed in SSR 96-7p as part of building a logical bridge for credibility determinations). Moreover, "[u]nder Social Security Ruling 96-7p, an ALJ's evaluation of a[n] applicant's credibility must be specific enough to make clear to [the court] how much weight the ALJ gave to the applicant's testimony and the

reasons for that decision." *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[T]he ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify the credibility finding with specific reasons supported by the record."); *Villano*, 556 F.3d at 562-63; *Ribaudo v. Barnhart*, 458 F.3d 580, 584-85 (7th Cir. 2006); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

The ALJ's credibility finding does not satisfy these requirements. The ALJ found Hinton to be not credible "to the extent [her statements] are inconsistent with" the ALJ's RFC determination. The Seventh Circuit has repeatedly held that "[t]his is precisely the kind of conclusory determination SSR 96-7p prohibits. Indeed, the apparently post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not." *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003); *see also Hamilton v. Colvin*, 2013 WL 1855725, at *4 (7th Cir. May 3, 2013) ("[T]he ALJ deems Hamilton's asserted limitations not credible 'to the extent' they are inconsistent with the RFC findings. As we have stressed repeatedly, the passage implies that the ALJ may permissibly settle on an RFC *before* assessing the claimant's credibility when in fact credibility must be assessed first."); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (same); *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012) (same); *Phillips v. Astrue*, 413 F. App'x 878, 886-87 (7th Cir. 2010) (same). The ALJ's credibility determination is similarly flawed, requiring a remand.

The ALJ's credibility determination falls short in other respects as well. The ALJ's decision recites much of the medical evidence, lists the elements that must be considered

pursuant to 20 C.F.R. § 416.929(c), and concludes that "the medical record in its entirety" reveals that Hinton's testimony about the intensity and persistence of her symptoms was not credible. Citing that portion of the ALJ's decision, the Commissioner argues that "the extensive review of the medical evidence and Hinton's alleged limitations" and the ALJ's reliance on Dr. Beller's testimony indicates that the ALJ's "determination is well-reasoned and supported by the evidence." Doc. 25 at 7-8. The Commissioner is incorrect.

SSR 96-7p provides: "It is … not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear … to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Although the ALJ concluded that "the medical record in its entirety demonstrates" that Hinton's pain and limitations were not debilitating, Doc. 15-5 at 13, the path of the ALJ's reasoning is unclear. Merely reciting the medical evidence in close proximity to conclusions does not create an accurate and logical connection between evidence and conclusions. *See Parker*, 597 F.3d at 922 (the ALJ must give some "clue to what weight the trier of fact gave the [claimant's] testimony"); *Young*, 362 F.3d at 1002.

The ALJ cannot have meant that Hinton was never diagnosed with medical conditions that could cause leg, neck, or arm pain. Doc. 15-5 at 9 (where the ALJ determined that spine disorders were a severe impairment and noted that Hinton had been diagnosed with neuropathy); Doc. 15-10 at 64 (neuropathy diagnosed); *id*. at 13 (spinal conditions diagnosed); Doc. 15-11 at 18 (same); *id*. at 141 (state doctor noted chronic neuropathy); *id*. at 138 (treating doctor assessed

cervical radiculopathy and diabetic neuropathy). If instead the ALJ meant that there was no objective medical evidence substantiating the severity of Hinton's pain, that finding alone could not support an adverse credibility determination. As the Seventh Circuit has held:

> We do not suggest that the absence of verifiable medical evidence of pain is an inadmissible consideration in a disability proceeding. In some cases, pain *does* have an objectively verifiable source, and if so the administrative law judge may certainly treat this as evidence that the claimant is disabled. And if the presence of objective indicators thus makes a claim more plausible, their absence makes it less so. It would be a mistake to say "there is no objective medical confirmation of the claimant's pain; therefore the claimant is not in pain." But it would be entirely sensible to say "there is no objective medical confirmation, and this reduces my estimate of the probability that the claim is true." The administrative law judge said the first, not the second.

*Parker*, 597 F.3d at 922-23; *see also Goble v. Astrue*, 385 F. App'x 588, 592 (7th Cir. 2010) (citing cases); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). If indeed the ALJ meant to rest the credibility determination on the asserted lack of objective medical evidence, the same mistake was made here. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("The etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report.") (internal quotation marks omitted); *Parker*, 597 F.3d at 922 ("[T]he etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to determine what is causing her pain that she is faking it.").

In the end, the ALJ's decision must explain the ALJ's analysis and provide specific reasons for the ALJ's credibility conclusions, particularly where, as here, certain impairments turn heavily on subjective experiences. Doc. 15-4 at 43-44, 46 (Dr. Beller testifying that the pain experienced by an individual suffering from neuropathy and spinal conditions varies

widely). Because the ALJ's opinion does not do this, the court is unable "to understand the weight given to [Hinton's] statements or the reasons for that consideration as required by SSR 96-7p." *Brindisi*, 315 F.3d at 788; *see also Martinez*, 630 F.3d at 697 ("Ignored was the requirement that administrative law judges carefully evaluate all evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it."). Remand is warranted on this ground as well. *See Craft*, 539 F.3d at 680 ("The [improper] credibility determination affected the ALJ's findings as to the extent of [the claimant's] limitations, which directly impacted the outcome at step five. … [That] error cannot be deemed harmless."); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) ("[T]he only situation[] in which an error in the factors considered by the trier of fact in making a credibility determination can confidently be thought harmless [is] when … it would be inconceivable for the trier of fact to have made a different finding on credibility.").

### B. Considering the Combined Effect of Hinton's Impairments

Hinton next argues that the ALJ's RFC determination failed to consider the combined effect of her impairments. Settled law holds that while a claimant's individual impairments may "not in themselves [be] enough to disable[,] … the combination of these conditions together" may be totally disabling. *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000); *see also Martinez*, 630 F.3d at 697-98, 698-99; *Parker*, 597 F.3d at 923; 20 C.F.R. § 416.945 (in assessing an individual's RFC, the ALJ must "consider the limiting effects of all [her] impairment(s), even those that are not severe"). Thus, "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010);

*see also Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2010); *Terry*, 580 F.3d at 477. The ALJ's opinion does not comply with this requirement.

The ALJ found that Hinton was severely impaired by type II diabetes mellitus, discogenic and degenerative disorders of the spine, migraine headaches, and arthritis in her left hand and lumbar spine. The ALJ also noted that Hinton had been diagnosed with neuropathy, though, as the Commissioner concedes, the ALJ made no mention of Hinton's obesity or anemia. Doc. 25 at 8. The ALJ then listed the medical evidence and stated: (1) "I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with" the evidence, (2) "there exist a number of reasons to reach similar ['not disabled'] conclusions," and (3) "while the claimant undoubtedly may experience some pain, limitations, and restrictions from her impairments, the medical record in its entirety demonstrates that the claimant has no greater limitations in her ability to perform work activities than those reflected in the residual functional capacity reached in this decision." Doc. 15-5 at 10, 12-13. In making these findings, the ALJ did not engage in any explicit analysis of Hinton's severe impairments in combination. The "fail[ure] to consider the aggregate effect of [Hinton's] ailments" requires remand. *Green*, 204 F.3d at 782 (remanding because "[e]ven if the shortness of breath and the chest pain were not in themselves enough to disable Green from doing medium work, the combination of these conditions together with his arthritis and swollen leg may have been"); *see also Denton*, 596 F.3d at 423; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The Commissioner's brief argues that the ALJ sufficiently considered Hinton's impairments in the aggregate because he mentioned most of the ailments in his summary of the medical evidence. As noted above, however, simply listing evidence does not build a logical

-16-

bridge between evidence and conclusions, and thus is not sufficient. The Commissioner's brief further contends that the ALJ did not mention Hinton's bouts with anemia, which required hospitalization, because there was no indication "that this condition was an ongoing impairment or impacted any limitation" and because "[t]here are only two documented cases of Hinton's anemia, and in both cases, the condition appears to be have been resolved." Doc. 25 at 8. But the ALJ never mentioned Hinton's anemia or the reasons why it was discounted. The court's review is limited to the reasons articulated in the ALJ's decision, not the post-hoc rationale submitted in the Commissioner's brief. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013); *Martinez*, 630 F.3d at 694; *Phillips*, 413 F. App'x at 886 ("These post-hoc rationalizations not only undermine our confidence in the accuracy of the Commissioner's representations of the record, but we have repeatedly warned that attempts to supplement the ALJ's decision are inappropriate. … [T]he government may not provide the missing justification for an ALJ's decision."); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that "a persuasive brief [cannot] substitute for" the ALJ's deficient opinion); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). Accordingly, the ALJ's decision cannot be sustained based on the different rationale pressed by the Commissioner's brief.

On remand, the ALJ should engage in a cumulative assessment of Hinton's impairments that a reviewing court can follow and assess. *See* 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically

severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."); *Golembiewski*, 322 F.3d at 918 ("Golembiewski has a host of significant medical conditions, including the partially amputated leg, epilepsy, back pain, bowel and bladder dysfunction, and grasping problems that we have discussed. Having found that one or more of Golembiewski's impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe. On remand the agency must remember that a competent evaluation of Golembiewski's application depends on the total effect of all his medical problems.") (citations omitted).

    **C.    Hinton's Other Argument**

Given the foregoing analysis, it is unnecessary to consider Hinton's argument regarding the ALJ's finding that she could use her upper extremities frequently. *See Fox v. Astrue*, 2010 WL 1381662, at *6 (S.D. Ind. Mar. 30, 2010) ("[B]ecause on remand the ALJ will reconsider the mental health evidence and restrictions … that process is likely to also [a]ffect the ALJ's view of [the claimant's] overall credibility. Under these circumstances, the court cannot affirm the ALJ's credibility analysis."); *Hudson v. Astrue*, 2009 WL 2612528, at *14 n.6 (N.D. Ill. Aug. 24, 2009) ("In light of this remand order [to reassess an RFC determination], we find it unnecessary to address the other arguments that plaintiff has raised. On remand, the ALJ will be free to re-examine and reassess those points, including … his credibility decisions in determining plaintiff's RFC.").

Before concluding, it bears mention that the ALJ's opinion appears to be internally inconsistent in the following respect. Hinton previously worked as a telephone clerk at an

answering service, a sedentary position that entailed sitting, answering phones, and taking messages. Doc. 15-4 at 32, 49, 51. At step four, the ALJ concluded that Hinton's impairments precluded her from returning to her "past relevant work as an answering service" because she no longer "possess[ed] the exertional/non-exertional requirements" necessary. Doc. 15-5 at 13. The ALJ then concluded at step five that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to," Hinton "would be able to perform the requirements of representative occupations such as … a telephone clerk." *Id*. at 14. On remand, the ALJ should address this apparent inconsistency, either by adjusting the assessment of Hinton's inability to perform past relevant work or the assessment of her ability to hold the job of telephone clerk. *Cf. Martinez*, 630 F.3d at 697 (where the evidence suggested that the claimant had difficulty using her hands, the ALJ's "suggestion that [claimant] could be a 'hand assembler' amount[ed] to a bad joke").

## Conclusion

For the foregoing reasons, the court grants Hinton's motion for judgment on the pleadings and remands the case to the Commissioner for further review consistent with this opinion.

June 11, 2013

United States District Judge